May it please the court. Good afternoon. My name is Devin Senges. It's an honor to be here today. It's made especially more meaningful because of who I represent. One of the most courageous women I have ever met, the petitioner, Mrs. Veronica Toledo-Vasquez. Mrs. Toledo-Vasquez is petitioning for review of the Board of Immigration Appeals denial of her asylum claim. The board adopted and affirmed the immigration judge's holding that she had not established past persecution or well-founded fear of future persecution based on a protected characteristic and that there was no nexus to that protected characteristic. The board focused exclusively on whether family was a particular social group and in the alternative finding that perhaps it was that she had not established that family was one central reason for the persecution that she suffered. I hope to put to rest the board's first conclusion rather quickly. It was legal error for the board to hold that family is not a particular social group for the purpose of asylum eligibility. This court has held for many years that family is a quintessential and prototypical social group under the three-part framework. Additionally, the singular case for which the board relied upon in finding that family was not a particular social group, matter of LEA, has since been vacated by the Attorney General in its entirety. The government rightly did not attempt to defend this particular finding in its brief before you today. Moving to the next question. Would you tell me who all the members are of the family members of your client? So my client is a member of the particular social group family of Gisela Toledo Vasquez. My client is the sister of Gisela Toledo Vasquez. I understand, but I want to know who all the members of this family are. So if you would just list them, 1, 2, 3, 4, 5, I would appreciate it. So as this court wrestled with in Velazquez, family is often a moving target. One could define family as nuclear family, which would be parents, siblings, and children. Certainly, Mrs. Toledo Vasquez, my client, was a one-time nuclear family member of her sister, Gisela Toledo Vasquez. At the outer reaches of your question, Your Honor, this court has found that, at the very least, cousins and uncles are family. I want names, please, of all the members of the family members of your client. Of my client's family, she would consider her family to be her parents, her siblings, her spouse, who unfortunately was brutally murdered, and her children. So that would include the three sisters and four brothers that she has? Yes, Your Honor. Certainly, she would say that. All right. Would that include Francisco's parents? Certainly, she would consider her parents-in-law to be members of her family, correct? All right. I don't know how you say this name. Is it Wittrego? Could you tell me how to pronounce that? Wittrego, yes, Your Honor. All right. Would Wittrego's mother be a member of this family? I would have to ask Veronica, Mrs. Toledo Vasquez, if she considered her… No, this is a legal question. …brother-in-law. Legally speaking, kinship has never been defined as to its outer borders. All we have is what this court… Do you consider her a family member of your client, that is, Wittrego's mother? No, Your Honor. Okay. And is Wittrego a member of your client's family? Yes, Your Honor. Okay. Thank you. That answers my question. Yes, Your Honor. And this court, at least, has relied upon its definition going all the way back to the board's seminal decision in Matter of Acosta, where Matter of Acosta identified kinship ties as a quintessential social group because of the immutable characteristics that the members shared. Based upon this, this court has recognized clan membership as well in the vein of family. And certainly, my client is closer in relationship to her sister than the petitioner in Crespin Valladares, who based his particular social group of family on his relationship with his uncle, as well as the family relationship claimed in Aquino Cordoba, where the petitioner claimed persecution or family membership based on his relationship with his cousin and his uncle. Counsel, could I follow up with some questions kind of related to the ones you just mentioned? As I read the IJ and the BIA opinions, and the BIA here adopts and affirms, so I think we consider them both. Do you agree with that? Yes, Your Honor, I do. They relied on the fact that the actual persecution and the threats of persecution all occurred after or in response to intervention and assistance to your client's sister, correct? Correct, Your Honor. And they relied on the fact that some of that intervention and assistance was from family members, like your client, but some of it was to non-family members, correct? That's right, Your Honor. That was one of the stated reasons. I can't remember if this was stated or not, but was there evidence of family members who did not assist and intervene to help your client's sister who were either threatened or physically persecuted? Yes and no, Your Honor. No, in the sense that every family member of Bisela Toledo Vasquez, who was physically present in Mexico, intervened based on their familiar relationship with Bisela, felt motivated to intervene. That would be my client, her husband, and their sister, Angelica, when she was in town visiting family. All other family members are residing in the United States and were unable to physically intervene. So what you're saying, your answer to my question, is that all the family members who were there did intervene. And they did, in fact, suffer persecution. Tragically, of course, Francisco Toledo, my client's husband, was brutally executed and beaten in front of his three minor children. And Angelica submitted a sworn declaration to the record testifying that she was subjected to death threats that she took credible enough to flee back to the United States. Do we have a case on our circuit where the persecution on account of a family membership, we've held that to be on account of family relationship as an appropriate nexus, where the persecutor is a member of that family? I do not believe so off the top of my head, Your Honor. Do you know of one from another circuit? Certainly, the Board of Immigration Appeals in matter of ARCG found that a persecutor was the husband because he was persecuting his wife due to his misogynistic beliefs as to the inferiority of the female gender. But the account was on the basis of gender rather than family relationship. Correct, Your Honor. So what I'm trying to find out, if there's a case from the BIA, from our circuit, or from any other circuit, where there's been a claim for a solemn or withholding on account of a family as the particular social group, where the persecutor has been a member of that group? Not that I've found, Your Honor, but this being one of the government's main points, I'd be happy to dive into this a little bit with you. Under the doctrine of, as you said, generis, and excuse my rusty Latin, we cannot categorically hold that just because the persecutor is a family member, close or distant, that the petitioner cannot meet their burden for asylum. This would mean that any young man who was persecuted because of the gender of his choice of partners or sexual orientation could not claim eligibility simply because the persecutor was a family member. But that would be an entirely different social group in that instance, right? But we look to, as the Congress has laid out the different protected grounds, we look to see what similarities they have in order to guide us and instruct us. That's a dangerous argument for you. A lot of people would say family groups don't have anything to do with the specified grounds Congress laid out. I realize we've got our cases to deal with, and that's one thing. I'm trying to figure out, in response to what Judge Diaz said, your answer to my question seemed to focus on whether or not other social groups besides family members would be, whether that would be protected grounds. Certainly, Your Honor. This court has held over and over again, as has every court who has considered the question, that kinship ties are a cognizable particular social group under the Act. The question for nexus in this court should be taken on a case-by-case basis, and no bright-line rule should be established. What is it about this case that distinguishes it from Velazquez? If this were an equational Velazquez case, Your Honor, I would stand here before you representing Gisela Toledo Velazquez. This court in Velazquez said that a purely interpersonal dispute between two people who were disputing over a common interest was beyond the reach of asylum eligibility. Here, it would be a great surprise to the persecutor and my client to discover that they were in an interpersonal dispute. In fact, the record is littered with evidence that the persecutor, Rogelio Wittrago, saw my client as sticking her nose into business where he considered it did not belong. The record is littered with evidence that Rogelio Wittrago saw his dispute as with his wife, and that anyone who dared intervene into that personal dispute was not minding their own business. And that's whether they're a family member or not based on the record, correct? So whether or not other individuals suffered persecution at Rogelio's hands is beside the point. My client's claim is based on the personal and direct threats that she suffered and whether there was a causal nexus between her family membership and those threats. But aren't we obligated to look at the record? And if what you said is true, which is a fair point, I think anyone who intervened in Wittrago's business, he persecuted. And there's evidence he did that of family members. There's evidence he did it of non-family members. Isn't the fact that the record indicates that he did it with non-family members part of the record we look at to determine whether the nexus you assert is correct? I disagree, Your Honor, and I believe the immigration judge was in error to do so. This court has said it is a too narrow line to draw or analysis to make to ignore the motivation. If someone is going to place themselves into a dangerous situation and into the crosshairs of a dangerous individual, a situation they would not otherwise have been in, this court has said if their motivation for doing so is based on familial ties, then the nexus ground is established. This court held that reasoning in Hernandez-Avalos and in Cantellano-Cruz v. Sessions. In Hernandez-Avalos, there were three different instances of persecution. Two where the gang members threatened the mother when she wouldn't hand over their son for gang membership. The first persecution was about whether she would report the persecutors to the police after she identified the body. At least in the footnote, it's all but said that that first persecution wouldn't be something that was on account of. Isn't that what we have here? We have persecution on account of sticking your nose in the bad guy's business. He seems to be a pretty equal applier of that rule, family members or not. But this court has held that if you're sticking your nose into that business because of a familial love, then it's a meaningless distinction to focus on the immediate trigger. Revenge for, say, going to the police or testifying in a trial of some sort and the very relationship that prompted the individual to take that action in the first place. I have an example, but I see my time is up. I don't know if you would like to hear it. Finish your answer to Judge Quattlebaum's question. So a great example, and I believe my case is indistinguishable from Contiano Cruz in that respect. In that case, Mrs. Contiano Cruz specifically went down to the docks where the murderer, Mr. Avila, was doing illegal operations. And Mr. Avila specifically told her to butt out and mind her own business if she knew what was good for her. The IJs short-sightedly focused on Avila's statement, which was to mind your own business, and too narrowly discounted the very relationship with her husband, Johnny Martinez, that prompted her to go down there in the first place. Thank you. Judge Diaz, can I ask a question? Certainly. Yes, please. I'm still trying to straighten out who are members of these different family groups. With regard to the family members of Guisela's Toledo-Vasquez, is Veronica a member of that family group, family member? Yes, Your Honor. Is Angelica? Absolutely. Are Guisela's parents members? Certainly. How about Guisela's three sisters and four brothers? Certainly. The family is close. She would say that her siblings are family members. All right. How about Francisco? I say that, yes, Your Honor, an in-law relationship is a family relationship. And Francisco's parents? I'm not sure what Guisela would think of that. I would say no. What Trago's mother? Certainly, that would be her mother-in-law. And what Trago? Yes, her husband. Okay. Thank you, Judge Diaz. That answers my question. Yeah. I have a follow-up to the question I asked you earlier about Velazquez. So I know you distinguish Velazquez, and the argument you made is that this is a different case in the sense that you've got people who are loggerheads with each other and your client's taken, as you described it, her nose into somebody else's business quite appropriately, I think, given the familial connections. But what is your position with respect to Velazquez? Do you think that case was correctly decided given our prior precedence, or are you simply content with distinguishing it on the facts of this case? I agree with the Court's two premises in that case, which were, one, that there was not enough evidence to – that substantial evidence held that there was only one motivation in that case, and that was fighting over the custody of a child, the grandmother, and the mother. And the Court's floodgates arguments were well taken that transforming any interpersonal domestic dispute into a potential asylum case would be dangerous, but I do believe that this case is not equational to Velazquez and is much more equational to cases like Hernandez-Avalos and Cantillano-Cruz. And what is it that makes it different, again, just so I understand your position? My client did not have a dispute of any kind with Mr. Wittrago, and Mr. Wittrago did not consider, from his very mouth, did not consider himself to have a dispute with my client. It was only the familial love for her sister that motivated her to take actions that the immigration judge and board narrowly and inappropriately focused on. This Court has called immediate triggers. Yeah, so I'm not sure how that's different from Velazquez up until the fight over the custody battle. I don't know this, but I assume there was no dispute between those family members up until the fight over who should take custody of the child. Both Mrs. Velazquez and her mother-in-law, Mrs. Estrada, wanted custody of this child. My client wanted nothing from Rogelio, and Rogelio wanted nothing from my client. And you think that's a distinction that matters? The purposes of asylum? In Velazquez, certainly the case found it instructive and informative. I mean, it was the very thing the case was based on, that this was an intrapersonal dispute between two individuals. Okay, thank you very much. Thank you. Ms. Burns, I see you there on the screen, so whenever you're ready. Good afternoon. Jessica Burns on behalf of the respondent, and thank you, Your Honors, for allowing me to appear remotely today. This case comes down to one issue, and it's whether Ms. Toledo met her burden of establishing that Rogelio targeted her because of her relationship to her sister and not because of her meddling in his marriage and agreeing to testify against him. Ms. Burns, I'm sorry to cut you off so early, but you just laid out the two reasons why she may have been persecuted, but those two reasons don't seem to be exclusive. They could work in tandem, and don't our cases say that at least when familial relationships are one central reason, if not the central reason, but at least one not insignificant reason for the basis of persecution, that that's enough? So why isn't that this case? This case is different from those, and the court has certainly found where the two bases are intertwined, there's a sufficient nexus. The court looks at whether the applicant was targeted rather than another person because of the protected characteristic, and here the significant difference is that Rogelio targeted non-family members in addition to family members for intervening in his relationship and agreeing to testify against him or leading to his arrest. He struck his own mother in the face when she tried to protect Gisela. He went after one of Francisco's friends who helped capture him leading to his arrest. He targeted Francisco's parents who called the police and again intervened in the relationship. And it's important to remember that the particular social group alleged in this case was family members of Gisela Toledo-Vazquez. Ms. Pernas, I'm sorry, so you laid out the motives of Wittrago, but why are we focusing solely on the motives of Wittrago? Aren't the motives of the person being persecuted equally as relevant? No, Your Honor, the relevant inquiry is the motive of the persecutor, not the victim, and the case law is clear on that. And it's been consistent that that's what's relevant here is the motive of the persecutor only. And so while Ms. Toledo may have been motivated to act to protect her sister based on their family relationship, there's just nothing in the record that compels a finding that that's why Rogelio acted. And this motive is supported by Ms. Toledo's own statements that she made in court. Let me ask you a little bit about our sort of gang cases where we've got cases where gang members are motivated to try to force the child of a mother to join the gang. It seems to me that those motivations are equally as indiscriminate as Wittrago's. They don't really care about the familial relationship. They just want somebody added to the ranks of their gang membership. And yet we say that because of the fact that the mother in that case was motivated to prevent that from happening because of her familial ties with the child, that that's enough. It's just hard for me to understand what the difference is in this case. So the difference is in the cases where the court found nexus, there was but for causation. But for the victim's relationship with the family member, they wouldn't have been targeted. So but for Ms. Hernandez-Avalos' relationship with her son, she wouldn't have been targeted by the gang. Here, you don't have that same but for causation because Rogelio went after other people who were not family members. So it shows that he wasn't motivated by the familial membership. Rather, he was motivated by the meddling in his relationship and the agreement to testify against him. And this motive is supported by Ms. Torredo's own statement in immigration court. She said that the robber told her the robber that came after her after Rogelio was arrested, told her, you know, don't go getting around into things. When asked why she was being threatened, she said it was because she got the police involved in Francisco's murder and because she was going to testify as a witness. Again, when she was asked why she'd be harmed upon her return to Mexico, she said, because I was the principal witness. She was targeted because she meddled in the relationship. And she is one of the main reasons that Rogelio went to prison. And so because of that, that makes this case different from the other cases where the court has found a sufficient nexus. This case is much more akin to Velasquez's recessions, where the applicant and her mother-in-law fought over custody of the child and ultimately led to threats and murder of the applicant's sister. And the court found that the mother-in-law was not motivated by a familial relationship. Similarly here, the familial relationship is merely incidental to Rogelio's decision to act. Counsel, can I interrupt you and talk about those two arguments? On the one hand, the nexus isn't met because there's persecution of non-family members. And I understand that argument. But then you're also saying it's like Velasquez, which is a completely intra-family dispute. Are those two arguments inconsistent? They're not, Your Honor, because the mere fact that the family relationship exists and perhaps motivated Ms. Toledo to act to protect her sister does not mean that that is why Rogelio was motivated to attack the people that meddled in his relationship. Also, Velasquez, unlike the other cases that did find nexus, similarly lacked the but-for causation that is lacking in this case that I mentioned earlier. Again, this case is also similar to Cedillo-Cedillo, where the record showed that the threats could have been directed at any person who interfered in the relationship or contributed to Rogelio's criminal prosecution. There's nothing in the record that compels a finding that Rogelio acted because of the familial relationship. And Petitioner hasn't identified anything that would compel that finding. Do you have anything else, Ms. Burns? I don't, Your Honor. Judge Traxler, do you have any questions of Ms. Burns? No, thank you, Judge Diaz. Thank you for your time. Yes, ma'am. Ms. Cengiz, you have some rebuttal. I want to ask you first about the distinction that your adversary on the other side made that essentially says that the motivations of the person being persecuted are completely irrelevant to the analysis. Do you agree with that? I do not agree with that, Your Honor. This court has said that where a person's family connection is the motivation behind them taking an action that then causes persecution, which this court has called an immediate trigger. So, in this case, Veronica agreeing to testify or aiding the police against Rogelio, any motivation that causes someone to take that action is indistinguishable from their family relationship. It is meaningless to say that that family relationship is not the but-for causation that Ms. Burns says is lacking in this case. The government cannot explain. I mean, the government focuses a lot on the fact that other people attempted to aid Ms. Gisela and perhaps experienced some types of harm. But the government cannot explain why Mrs. Toledo-Vasquez, my client, would have taken these actions but for her relationship with her sister. But for her love and loyalty to Gisela, she would not have agreed to take any action against Mr. Wittrago at all. She would not have aided the police in any kind of action against this man. She would not have agreed to move against him in any kind of criminal or civil trial involving him. It was solely her love, her sacrificial love for her sister, that motivated her to again and again put herself in these dangerous positions. But for her relationship with Gisela, she would not have been involved with this man at all. This court called it meaningless to distinguish that family love and the actions that a victim has taken that attracts the ire of some of these persecutors. Again, Cantiano-Cruz and Hernandez-Avalos are the two main ones. Counsel, can I follow up? Does that answer your question? By the way, I think the record is replete of the courage and love your client showed. So please don't take any of my questions to suggest otherwise. But in those cases, did the record show that the persecutors, like the record shows here, were persecuting non-family members? Certainly, in Cantiano-Cruz, Mr. Avila was considered a general criminal actor. The MS-13 and Hernandez-Avalos were. The government used the same argument in that case that because MS-13 harmed large swaths of the population, that that somehow diminished the nexus or affected our nexus analysis in this court. I believe it's disingenuous for Mrs. Burns and rather selective of her to cite only portions of the record where Mrs. Toledo-Velasquez says she was targeted because she testified as a witness. In fact, the record is replete with evidence that shows that she and the persecutor, evidence that she was harmed because of her family relationship. For example, on the record of page 120, the persecutor's own sister told Mrs. Toledo that she was sticking her nose into the matter and she would be sorry. Mrs. Toledo-Velasquez says on page, in fact in the very beginning of her testimony on page 93, when asked what kind of problems she had, in Mexico she had sister problems, not Rogelio problems, indicating she saw that this was because of the actions that she had taken to protect her sister. On page 165, Gisela herself tells Mrs. Toledo-Velasquez, you have helped me so much before that Rogelio tells me one day he will hurt you. On pages 166 and 458, Mrs. Toledo-Velasquez terrorized that Mr. Huertrago was terrorizing her, sending her a message about what would happen if she continued to help Mrs. Toledo-Velasquez referencing her sister. The proper opinion or the proper analysis for the immigration judge and the board to take in this case, going all the way back to basics, is whether or not Mrs. Toledo-Velasquez's relationship with her sister was one central reason for the harm she suffered, and that has to be more than a superficial reason. Surely, love for one's sister, no reasonable adjudicator could claim that that is a superficial reason. Indeed, in this case, it was a sacrificial reason as it led to the ultimate price, the murder of her husband, the loss of her three children's fathers, and forever losing the ability to live in peace and safety in her home and native country. Thank you. Thank you, Ms. Enges. Thank you both for your able arguments this very much. At this time, the court will stand adjourned until tomorrow morning. Thank you.
judges: Albert Diaz, A. Marvin Quattlebaum Jr., William B. Traxler Jr.